IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LESLIE HUMPHREY,** | : | No. 22-CV-01587 |
| **Plaintiff,** | : | |
| v. | : | |
| **GERALD DANIEL WORLDWIDE INC.,** | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant Gerald Daniel Worldwide Inc.'s ("GDW") motion for summary judgment. (Doc. 8.) For the reasons set forth below, the motion will be granted in part.

## I. BACKGROUND

Plaintiff Leslie Humphrey was hired by GDW in 2017 as an "ISO Coordinator" in GDW's Hanover, Pennsylvania facility. (Doc. 9 ¶ 1.) As an ISO Coordinator, Humphrey's essential tasks were to (1) create, revise, and control procedures, work instructions, and other documentation, (2) participate in resolution of internal and external corrective actions in manufacturing processes, (3) perform internal quality audits, (4) ensure GDW's quality system complies with applicable standards, (5) communicate with customers on quality issues, (6) partner with sales and engineering teams to develop new products, (7) participate in customer-related

1

ISO documentation and qualification, and (8) complete requests for material compliance with various systems. (*Id*. ¶ 3.) Humphrey was the only ISO Coordinator working at Defendant's Hanover facility. (*Id*. ¶ 2.)

In April 2020, in response to the COVID-19 pandemic and guidelines from the Commonwealth of Pennsylvania and the Center for Disease Control, GDW moved Humphrey and certain other employees who were not involved in the manufacturing process to remote-work status. (*Id*. ¶¶ 9-10.)

Following the birth of her daughter on June 24, 2020, Humphrey began a leave of absence under the Family and Medical Leave Act ("FMLA"). (*Id*. ¶ 12.) During the leave of absence, Humphrey experienced a flare-up of her Multiple Sclerosis ("MS"), which prevented her from sitting, walking, driving, or working in any capacity. (*Id*. ¶¶ 13-14.) As a result, on August 17, 2020, Humphrey provided GDW with a note from her physician, requesting that she be released from her postpartum FMLA leave and permitted to take FMLA leave for her MS flare-up. (*Id*. ¶ 15.) Humphrey's physician requested that leave be permitted through September 24, 2020, indicating that she would be unable to perform any job duties before that date. (*Id*. ¶¶ 16-17.) The application was granted. (*Id*. ¶ 18.)

On September 18, 2020, Humphrey provided GDW with a note from her physician indicating that she could return to work on September 22 with the restriction that she work remotely. (*Id*. ¶ 20.) Humphrey also submitted a request for

accommodation asking to work remotely due to her MS flare-up. (*Id.* ¶ 21.) The request was granted. (*Id.* ¶ 22.)

Around the same time, GDW was attempting to return most of its employees to working from the office. (*Id.* ¶ 23; Doc. 14 ¶ 23.) Accordingly, in the ensuing months, GDW's human resources director, Nancy Bankert, spoke with Plaintiff on numerous occasions to inquire when she would be able to return to work in person. (Doc. 9 ¶ 25; Doc. 14 ¶ 25.)

On May 5, 2021, Humphrey provided GDW with a note from her doctor that indicated Humphrey was still unable to work in person and that her remote work restriction would need to continue for at least another four to six months. (Doc. 9 ¶ 31.) Humphrey was receiving infusion treatments at the time, which resulted in fatigue, issues with incontinence, and disruptions to her eating and sleeping schedules. (*Id.* ¶ 32.) A few weeks later, Ms. Bankert spoke with Humphrey regarding the doctor's note and explained to Humphrey that she could not continue working from home. (*Id.* ¶¶ 33-34.) Humphrey was nevertheless unable to return to work onsite, and as a result, on June 4, 2021, GDW terminated Humphrey's employment. (*Id.* ¶¶ 37-39.)

In September 2022, Humphrey initiated this action by filing a complaint against GDW in the Court of Common Pleas of York County, Pennsylvania, asserting claims for disability discrimination based on a failure to accommodate in

violation of the Americans with Disabilities Act of 1990 and the Pennsylvania Human Relations Act, as well as sex and pregnancy discrimination in violation of Title VII. GDW removed to this court and has now filed a motion for summary judgment on all Humphrey's claims. The motion has been fully briefed and is ripe for disposition.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving

party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

### III. DISCUSSION

GDW moves for summary judgment on Humphrey's disability discrimination claims based on a failure to accommodate under the ADA and PHRA, which are analyzed under the same standard. *See Soutner v. Penn State Health*, 841 F. App'x 409, 415 (3d Cir. 2021). To establish a prima facie claim of discrimination under the

ADA, the plaintiff must show she "(1) has a 'disability,' (2) is a "qualified individual," and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (citations omitted). The statute defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." 42 U.S.C. § 12111(8).

As relevant here, unlawful discrimination includes "not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). "An employer discriminates against a qualified individual when it does not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 608 (3d Cir. 2006) (quoting 42 U.S.C. § 12112(b)(5)(A)).

"An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her

6

disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004).

Here, it is undisputed that Humphrey had a disability in the form of MS of which GDW was aware, and that Humphrey requested an accommodation in the form of remote work for four-to-six months, and that Humphrey suffered an adverse employment in the action in the form of termination. Moreover, while GDW's motion most strenuously challenges Plaintiff's status as a "qualified individual," a triable issue exists as to whether Humphrey could have performed the essential functions of her position with reasonable accommodation. Humphrey demonstrates that, by all appearances, she was able to fulfill the responsibilities of the role while working from home during the height of the pandemic, as much of the company's other staff did during a six-month period in 2020. The record likewise shows that while Humphrey was temporarily working remotely, she was able to travel to the office on the single occasion that her physical presence was needed to fulfill her role. (Doc. 9 ¶¶ 28-29.)

GDW does not point to any concrete job functions listed in the ISO Coordinator job description that Humphrey was unable to perform remotely. And while GDW does repeatedly argue that it was forced to reassign certain of

Humphrey's responsibilities during the time she worked from home, the affidavit statements and interrogatory answers on which it relies are devoid of substance. (*See* Doc. 11 p. 134) (swearing that Humphrey "was unable to effectively perform the majority of her duties from home," and that as a result, "I had to reassign several of Humphrey's duties to other employees within the Quality Department"); (Doc. 11 p. 123) (averring that following Humphrey's termination, her duties "were absorbed by Bryan and his team, similarly to when Plaintiff was working remotely") (*see also* Doc. 11 p. 102) (explaining to Humphrey in her termination letter, "[w]hile you were able to adequately complete requests for material compliance on a temporary basis (REACH, RoHs, CMRT, USMCA, Prop65), the majority of this role cannot be performed effectively working remotely any longer. Further, the Company cannot continue shifting the burden to others within the Quality Department.") Considering the temporary nature of Humphrey's request to work from home, Humphrey's capacity to fulfill the duties of the position remotely, the parties' ability to accommodate Humphrey's physical presence on the rare occasion that it was needed, and the lack of any substantive evidence as to the need to reassign Humphrey's responsibilities, fact issues preclude summary judgment as to whether Humphrey was a qualified individual under the statute.

    So too does the record support that GDW failed to make a good faith effort to assist Humphrey in seeking accommodations. In response to Humphrey's May 2021

request for accommodation, GDW outright denied the request and told Humphrey she had to return to work. There is no suggestion that a meaningful dialogue was opened, or that additional information was requested, or that alternative accommodations were offered. *See Soutner*, 841 F. App'x at 415 (explaining that an employer "can show good faith, by example, 'meeting with the employee who requests an accommodation and discussing available alternatives when the request is too burdensome'") (brackets omitted) (quoting *Taylor*, 184 F.3d at 317). In the absence of any such indicia that the interactive process was followed, GDW's representation that it actually searched in vain for alternative open positions with the company goes to the weight of evidence and is not dispositive. To the extent GDW argues that Humphrey's requested accommodation for temporary remote work was not reasonable, the record likewise presents a question of fact for similar reasons outlined above. Humphrey has made a prima facie showing that her requested accommodation was possible and that she was able to complete the essential functions of the position remotely, and GDW's motion fails to actually explore whether the accommodation would have posed an undue hardship to the company. Without any details of the tasks that GDW had to reassign to others, the record fails to shed light on any burden the arrangement would have presented to company.

Finally, though Humphrey presents sufficient evidence to survive summary judgment on her failure-to-accommodate claims, GDW is nevertheless entitled to

9

summary judgment on Humphrey's remaining claims for sex and pregnancy discrimination. There is no indication in the record that Humphrey was terminated because of her sex or pregnancy. The evidence supports that the company accommodated Humphrey's requests for leave in connection with the birth of her child, and Humphrey does not point to any temporal connection or other nexus between her pregnancy and termination to suggest they were related. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008). Moreover, for the reasons explained in GDW's memorandum in support of its motion, Humphrey fails to point to any evidence that similarly situated employees outside her protected class were treated more favorable. Without any suggestion that Humphrey was mistreated because of her sex or pregnancy, Humphrey cannot make out a prima facie claim and GDW is entitled to summary judgment.

## IV. CONCLUSION

For the reasons outlined above, GDW's motion for summary judgment will be granted as to Humphrey's claims for sex and pregnancy discrimination under Title VII, and denied with respect to Humphrey's claims for failure-to-accommodate under the ADA and PHRA. An appropriate order shall follow.

s/Sylvia H. Rambo<br>
Sylvia H. Rambo<br>
United States District Judge

Dated: April 4, 2024